**ROCKY MOUNTAIN NATURAL GAS COMPANY, Petitioner.**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Jack J. Grynberg, Intervenor.

No. 96–1328.

United States Court of Appeals, District of Columbia Circuit.

Argued May 7, 1997.

Decided June 6, 1997.

Michael L. Beatty, Washington, DC, argued the cause for petitioner, with whom William S. Scherman and John N. Estes, III were on the briefs.

Joel M. Cockrell, Attorney, Federal Energy Regulatory Commission, Washington, DC, argued the cause for respondent, with whom Joseph S. Davies, Acting Solicitor, was on the brief.

Nancy J. Skancke, Washington, DC, argued the cause for intervenor Jack J. Grynberg.

Before: GINSBURG, SENTELLE, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Rocky Mountain Natural Gas Company petitions for review of an order of the Federal Energy Regulatory Commission granting Jack Grynberg and his business partners retroactive abandonment of their interstate service obligations with respect to six natural gas wells. Because that decision cannot be reconciled with the Commission's own precedent, we grant the petition and remand this matter to the agency for further proceedings.

## I. Background

In 1968 Jack Grynberg and his partners in the Greater Green River Basin Drilling Program (hereinafter Grynberg) entered into a contract to sell gas from certain fields in Colorado to the Mountain Fuel Company for a term of 20 years. Grynberg obtained authorization from the FERC to sell the gas in interstate commerce and thereafter connected one well to Mountain Fuel's distribution system.

In 1975 Grynberg entered into a contract with Rocky Mountain for the sale in intrastate commerce of gas from certain wells in the fields described in the 1968 contract with Mountain Fuel. In 1991 Rocky Mountain determined that this gas previously had been dedicated to interstate commerce; the buyer thereupon refused to continue paying more than the price set by the Commission for gas that had been dedicated to interstate commerce before enactment of the Natural Gas Policy Act in 1978. Rocky Mountain also demanded the refund of all monies that it had already paid Grynberg for gas at prices in excess of the ceiling price established for interstate gas. Grynberg refused, and this litigation ensued.

In 1992 the Commission determined that the gas here at issue indeed had been dedicated to interstate commerce by the 1968 contract between Grynberg and Mountain Fuel. *Grynberg v. Rocky Mountain Natural Gas Company*, 60 FERC ¶ 61,167 (August 7,

1992). The gas sold to Rocky Mountain should, therefore, have been sold interstate and at the price established pursuant to § 104 of the NGPA. Accordingly, the Commission ordered Grynberg to refund any amounts paid in excess of the § 104 price, plus interest.

Grynberg filed a petition for rehearing seeking, among other things, retroactive abandonment of his 1968 dedication of gas to interstate commerce. *Grynberg v. Rocky Mountain Fuel Company*, 62 FERC ¶ 61,046 (January 21, 1993). The Commission concluded that retroactive abandonment would be inappropriate because: (1) Grynberg knowingly diverted gas from the interstate market to the intrastate market and therefore had "unclean hands"; (2) the only "real risk Grynberg took was the risk in selling gas in the intrastate market illegally without seeking affirmation from the Commission that what it was doing was legal"; and (3) the Commission could not "permit Grynberg to collect a price higher than Congress allowed."

Grynberg then filed a second petition for rehearing asking the Commission to disallow refunds for the period from 1975 to 1978, *i.e.* before the NGPA had superseded the Natural Gas Act. The Commission granted this petition, reasoning that the NGA had been enacted for the protection of interstate purchasers, whereas Rocky Mountain—the only party claiming to have been injured by the diversion of gas under the 1975 contract— was an intrastate purchaser. *See Grynberg v. Rocky Mountain Natural Gas Company*, 63 FERC ¶ 61,315 (June 23, 1993). Therefore, with respect to the award of refunds for the period before enactment of the NGPA in 1978, the Commission concluded:

The equities of the case do not require that Rocky Mountain receive the additional benefit of refunds, when it has already obtained the benefit of receiving gas which was dedicated to the interstate market. In this case, however, no downstream interstate purchaser or consumer has filed a complaint or alleged that it suffered any damages as a result of the diversion. Accordingly, we will not require Grynberg to refund pre-NGPA overcharges to the in-

terstate customer to whom the gas was dedicated as damages for the diversion. This still left Grynberg liable for overcharges on sales made between 1978 and 1991, wherefore Grynberg then petitioned this court for review.

We vacated the Commission's order because the agency, in determining that Grynberg had dedicated to interstate commerce all the gas underlying the acreage described in the 1968 contract, had relied exclusively upon a prefatory "whereas" clause of ambiguous import, which seemed to make superfluous one article in the body of the contract. *Grynberg v. FERC*, 71 F.3d 413, 416 (1995). We therefore remanded the case for the Commission to interpret the contract as a whole. *Id.* We also suggested that, if the Commission adhered to its view that the contract dedicated the gas to interstate commerce, then it would need to reconsider whether Grynberg had acted in bad faith because:

> Grynberg appears to have acted on a good faith belief that the six wells were not dedicated to interstate commerce. As we have seen, the contract is ambiguous; it is subject to more than one reasonable interpretation.

*Id.* at 417.

On remand the Commission did adhere to its original understanding of the contract. *Grynberg v. Rocky Mountain Natural Gas Company*, 75 FERC ¶ 61,013 (April 2, 1996), *reh. den.* 76 FERC ¶ 61,082 (July 22, 1996). This time, however, the Commission concluded that granting retroactive abandonment of the contract would be appropriate, but not because it had reconsidered whether Grynberg had acted in good faith. Rather, the agency said that Grynberg's state of mind was "irrelevant;" Grynberg was entitled to retroactive abandonment because no interstate purchaser had been aggrieved by his diversion of gas to the intrastate market. Rocky Mountain petitioned this Court for review.

## II. Analysis

Rocky Mountain argues that the Commission should not have allowed Grynberg retroactively to abandon his commitment of gas to the interstate market because he has unclean hands. In concluding that Grynberg's unclean hands were "irrelevant," the Commission, according to Rocky Mountain, ignored settled principles of equity as well as its own established practice of treating unclean hands as a *de facto* bar to equitable relief.

The Commission responds that it based its decision to grant retroactive abandonment squarely upon our decision remanding the case. In this regard the Commission points to our statement that the Commission would "need to reconsider [whether Grynberg had unclean hands] if it finds, on remand, that the 1968 agreement dedicated the gas from the six wells to interstate commerce." 71 F.3d at 417. As the Commission understands this passage, the court virtually compelled it to grant retroactive abandonment on remand.

We see no such compulsion in our prior opinion. We neither held nor suggested that a party should have access to equitable relief without regard for whether his hands are clean. We suggested only that, in light of what appeared to the Court to be an ambiguous contract, the Commission, should it find that the 1968 contract had in fact dedicated the gas here at issue to interstate commerce, would need to reconsider its finding that Grynberg had acted in bad faith. In the Commission's final analysis, Grynberg still might be charged with understanding the meaning of this ambiguous contract, if not in 1968, then by 1975. But we left that determination to the agency.

As we have said, on remand the Commission decided anew that the 1968 contract had dedicated to interstate commerce the gas that Grynberg sold intrastate in 1975—a point that Grynberg no longer contests. Then, however, as a consequence of the aforementioned misunderstanding, the Commission thought itself constrained to reach a decision at odds with its earlier decision in *Mitchell Energy Corporation*, 37 FERC ¶ 61,128 (November 10, 1986). In that case, the Commission had considered it relevant, in determining whether to grant retroactive abandonment, that a contract dedicating certain gas to interstate commerce had been

executed before the law regarding dedication was clear. The seller's understandable mistake of law, coupled with the lack of injury to any party in the particular circumstances of that case, moved the Commission to allow the seller retroactively to abandon its prior dedication to interstate commerce of the gas that it sold intrastate in 1954. The Commission denied retroactive relief, however, with respect to other wells the gas from which the seller did not divert to interstate sales until 1960. By that time Mitchell reasonably should have understood that the gas was dedicated to interstate commerce.

Here, too, the Commission found the diversion of gas from interstate to intrastate commerce had harmed no one. Assuming that the Commission would have followed rather than overruled *Mitchell* as a matter of policy, the Commission should then have determined whether *Grynberg* should reasonably have been aware in 1975 that the 1968 contract had dedicated the gas to interstate commerce (in which case *Mitchell* would seem to bar equitable relief) or was reasonably unaware of the dedication (in which case *Mitchell* would support the grant of relief). The Commission instead followed a third course, dismissing Grynberg's mental state as irrelevant and granting retroactive abandonment solely upon the ground that no party had been injured by the diversion. In so doing, the Commission treated as irrelevant the very factor that it had considered dispositive under seemingly identical circumstances in *Mitchell.* That decision cannot stand.

### III. Conclusion

The Commission departed without adequate explanation from its precedent in *Mitchell Energy Corp.,* apparently believing that our earlier decision remanding this case so required. The Commission was under no such compulsion, however. We must therefore remand this matter again for the Commission to resolve it in a manner consistent with its own precedent and policy.

*So Ordered.*